Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
Phone: (805) 750-8852
Email: bsegee@biologicaldiversity.org
*Pro Hac Vice Application Pending*

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON DIVISION**

Center for Biological Diversity, a non-profit organization; Maricopa Audubon Society, a non-profit organization,

Plaintiffs,

v.

David Bernhardt, in his official capacity as Secretary of the Interior; U.S. Fish and Wildlife Service,

Defendants.

Case No.: ______________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. Plaintiffs Center for Biological Diversity ("Center") and Maricopa Audubon Society challenge, pursuant to the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"), the U.S. Fish and Wildlife Service's ("FWS") failure to make a required "12-month finding" on their December 14, 2017 Petition to revise existing critical habitat for the endangered Mount Graham red squirrel (*Tamiasciurus hudsonicus grahamensis*).

2. Mount Graham red squirrels are a native species found only in the Pinaleño Mountains of southeast Arizona. They are a sub-species of the North American red squirrel, distinguished by a smaller body and narrower head, but sharing the same brownish-red sides and white belly. Believed to be extinct in the 1960s, the Mount Graham red squirrel was "rediscovered" in the 1970s and listed as endangered in 1987.

3. Critical habitat was designated for the Mount Graham red squirrel pursuant to the Endangered Species Act on January 5, 1990. This designation is currently limited to high elevation spruce-fir forests in the Pinaleño Mountains within the Coronado National Forest (centered around Hawk Peak-Mount Graham, Heliograph Peak, and Webb Peak). However, since that time essentially all of the upper elevation spruce-fir habitat has been degraded or destroyed by telescope construction, wildfire (and related intentional "back burning" to protect the telescopes), drought, insect outbreaks, and other ecological changes influenced by climate change. Consequently, the Mount Graham red squirrel population has become critically endangered, plummeting to as few as 35 animals. Only 109 animals were detected in the most recent 2020 fall survey.

4. Lower elevation mixed-conifer forests—which have long been recognized as important to the species—are now serving as refugia from the destruction of spruce-fir habitat and, for the foreseeable future, are essential to the species' continued survival. Today, surviving squirrels are found primarily in four areas (Grant Hill, Riggs Lake, Turkey Flat, and Columbine), all outside of the upper elevation spruce-fir forests currently designated as critical habitat.

5. In order to address these changing circumstances and the dire status of the Mount Graham red squirrel, on December 14, 2017, Plaintiffs petitioned for revision of the existing critical habitat to include these lower elevation mixed-conifer forests and other essential areas. The following map shows the currently designated Critical Habitat outlined in green with the currently occupied Mount Graham red squirrel areas found outside of the currently designated Critical Habitat:

Mt. Graham Red Squirrel
Critical Habitat
Midden Areas Fall 2020
CORONADO
FOREST
PINALENO
0 0.5 1 2 Miles

6. FWS failed to timely issue its initial response to the petition, the "90-day finding," which was required in March of 2018. When FWS had still not issued the 90-day finding more than a year later, on April 16, 2019, Plaintiffs sued in this Court to compel the decision. *Center for Biological Diversity, et al. v. Bernhardt, et al.*, Case No.: 4:19-cv-00218-RCC. Following the Parties' stipulation to stay existing deadlines, on September 6, 2019, FWS finally published the required 90-day finding in the Federal Register, announcing that Plaintiffs' Petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted. 84 Fed. Reg. 46,927.

7. Once FWS makes a positive 90-day finding, it must then make a subsequent determination as to how "to proceed with the requested revision" and publish that determination in the Federal Register within 12 months. 16 U.S.C. § 1533(b)(3)(D)(ii). FWS is in ongoing violation of the Endangered Species Act by failing

to timely issue this "12-month finding." Plaintiffs now again sue to compel a statutorily-required finding on their Petition.

8.   Plaintiffs seek declaratory and injunctive relief to enforce the mandatory deadline for Defendants to make a 12-month finding on the Petition to revise critical habitat for the Mount Graham red squirrel under the Endangered Species Act. 16 U.S.C. § 1533(b)(3)(D)(ii).

**JURISDICTION AND VENUE**

9.   This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g) (action arising under ESA citizen suit provision); 5 U.S.C. § 702 (APA review); and 28 U.S.C. § 1331 (federal question jurisdiction).

10.  The Court may grant the relief requested under the ESA, 16 U.S.C. § 1540(g); the APA, 5 U.S.C. §§ 701–706; and 28 U.S.C. §§ 2201 and 2002 (declaratory and injunctive relief).

11.  Plaintiffs provided sixty (60) days' Notice of their intent ("NOI") to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to FWS dated September 16, 2020. FWS has not responded to Plaintiffs' NOI. Accordingly, Defendants have not taken action to remedy their continuing ESA violation by the date of this complaint's filing. Therefore, an actual controversy exists between the parties under 28 U.S.C. § 2201.

12.  Venue is proper in the United States District Court for the District of Arizona pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the Center's claims occurred in this District. Additionally, the Center resides in Tucson, Arizona.

**PARTIES**

13.  Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit environmental organization dedicated to the protection of native species and their habitats through science, policy, and environmental law. The Center is headquartered in Tucson, Arizona, with offices throughout the United States, including Alaska,

California, the District of Columbia, Florida, Hawaii, Minnesota, New Mexico, North Carolina, Oregon, and Washington. The Center has more than 81,000 members. The Center and its members are concerned with the conservation of imperiled species, including the Mount Graham red squirrel, and with the full and effective implementation of the Endangered Species Act. The continuing decline and near extinction of the Mount Graham red squirrel has prompted the Center to act for the species by, among other actions, submitting the Petition to revise critical habitat.

14. Plaintiff MARICOPA AUDUBON SOCIETY, a chapter of the National Audubon Society located in the Phoenix metropolitan area, is a non-profit environmental organization of volunteers dedicated to the enjoyment of birds and other wildlife with a primary focus on the protection and restoration of the habitat of the Southwest through fellowship, education, and community involvement. Maricopa Audubon has over 2,300 members, primarily in central Arizona. Maricopa Audubon has been actively involved in efforts to protect the Mount Graham red squirrel and its habitat since 1988.

15. Plaintiffs' members include individuals who regularly visit areas within the Pinaleño Mountains which are occupied or formerly occupied by the Mount Graham red squirrel, and seek to observe or study the squirrel in its natural habitat. Plaintiffs' members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefit from these activities, and intend to continue to use and enjoy these areas in the future.

16. The above-described aesthetic, recreational, professional, and other interests of Plaintiffs and their members, have been, are being, and will continue to be adversely harmed by FWS's failure to timely issue the required 12-month finding on the Petition to revise critical habitat. The injuries described are actual, concrete injuries presently suffered by Plaintiffs and their members, and they will continue to occur unless this Court grants relief. The relief sought herein—an Order compelling a 12-month finding on the Petition to revise critical habitat—would redress these injuries. Plaintiffs and their members have no other adequate remedy at law.

17. Defendant DAVID BERNHARDT is the Secretary of the United States Department of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including responses to petitions to revise critical habitat. Secretary Bernhardt is sued in his official capacity.

18. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA for the Mount Graham red squirrel.

**LEGAL BACKGROUND**

19. The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b).

20. ESA section 4 requires that the Secretary protect imperiled species by listing them as either "endangered" or "threatened." *Id.* § 1533(a)(1). A "species" "includes any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

21. FWS is required to designate "critical habitat" concurrently with listing a species as threatened or endangered with limited exceptions. *Id*. § 1533(a)(3)(A).

22. Critical habitat includes the specific areas occupied by the species with "physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection." *Id*. § 1532(5)(A). It also includes specific areas unoccupied by the species at the time of listing "upon a determination by the Secretary that such areas are essential for the conservation of the species." *Id*. In turn, "conservation" means "the use of all methods and procedures which

are necessary to bring endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." *Id.* § 1532(3).

23. Protecting a species' critical habitat is crucial for the protection and recovery of many listed species, particularly those that have become endangered or threatened due to historic and ongoing habitat loss and/or degradation. When critical habitat is designated, federal agencies must ensure that their actions do not "result in the destruction or adverse modification" of a species' critical habitat. *Id.* § 1536(a)(2).

24. FWS maintains ongoing duties with respect to critical habitat. The ESA provides for critical habitat revision, subject to the same "best available scientific data" standard as an initial designation. *Id.* § 1533(b)(2).

25. The Endangered Species Act provides the right to petition for critical habitat revision, in accordance with the APA. 16 U.S.C. § 1533(b)(3)(D)(i)-(ii); 5 U.S.C. § 553(e). The evaluation of such petitions is governed by ESA implementing regulations. 50 C.F.R. § 424.14(c), (e).

26. The ESA requires FWS, within 90 days of receiving the critical habitat revision petition, to "make a finding as to whether the petition presents substantial scientific information indicating that the revision may be warranted." 16 U.S.C. § 1533(b)(3)(D)(i).

27. If FWS makes a positive 90-day finding, it must then make a subsequent determination within 12 months as to how "to proceed with the requested revision" and publish that determination in the Federal Register. *Id.* § 1533(b)(3)(D)(ii).

## FACTUAL BACKGROUND

### I. The Mount Graham Red Squirrel

28. The Mount Graham red squirrel is found nowhere else in the world besides the Pinaleño Mountains in southeast Arizona. Named after the highest peak in the range, the squirrel has been isolated from other squirrel subspecies since the last ice age, approximately 10,000 years ago.

29. Renowned for its ferocious protection of its home territories, the Mount Graham red squirrel is smaller than most other red squirrel subspecies, weighing in at only 8 ounces and measuring about 8 inches in length. The squirrel's diet consists primarily of conifer seeds, and during the winter it relies upon seed-bearing cones that have been stored at sites known as middens. These caches are the focal point of the individual squirrel's territory, and are typically located in logs, snags, stumps, or a large live tree. The condition of these midden sites must remain cool and moist in order to preserve the cached cones.

30. The Mount Graham red squirrel was first described in 1884, and was reportedly common around the turn of the 20th century. The species was, however, declining by the 1920s and rare by the 1950s, likely due to destruction of forested habitat from logging and competition with an introduced population of Abert's squirrels.

31. Small scale logging activity began in the Pinaleño Mountains in the 1880s and accelerated in the 1930s. In the early 1960s, road construction had reached Mount Graham (High Peak) and by 1973, the majority of accessible ancient forests had been logged, greatly reducing the age structure, density, and quality of the squirrel's habitat.

32. From 1963 to 1967, researchers were unable to locate any remaining Mt. Graham red squirrels but some were reported shortly thereafter by Forest Service personnel, and in the early 1970s at least four red squirrels were recorded by Arizona Game and Fish Department and Forest Service personnel.

33. In a 1984-85 status survey funded by FWS, researchers located the Mount Graham red squirrel or its sign at 16 locations in the Pinaleño Mountains and estimated its population to be 300-500 animals. These estimates were later revised downward, to approximately 280 squirrels.

## II. Listing and Designation of Critical Habitat Under the Endangered Species Act

34. FWS proposed listing the Mount Graham red squirrel as an endangered species and designating critical habitat on May 21, 1986, 51 Fed. Reg. 18,630, and issued a final listing rule on June 3, 1987. 52 Fed. Reg. 20,994.

35. Like all subspecies of red squirrels, the Mount Graham red squirrel is an arboreal species. At the southern extremity of the red squirrel range, the Mount Graham red squirrel is restricted to canopied montane forests.

36. At the time of its listing, the squirrel was found at highest densities in Engelmann spruce and corkbark fir forests, comprising 86 percent of all middens surveyed, with 48 percent of the species' active middens located above 10,200 feet in elevation. In total, FWS estimated there to be 680 acres of contiguous spruce-fir forest in the Pinaleño Mountains, with an estimated density of one red squirrel per 8 acres.

37. The squirrel was also found below 9,200 feet in elevation at the time of listing, with an estimated density of one red squirrel per 124 acres.

38. In the final listing rule, FWS recognized the proposed construction of a major astrophysical facility on Mount Graham by the University of Arizona as a primary threat to the squirrel. 52 Fed. Reg. at 20,997. FWS identified numerous potential negative effects of telescope construction, including removal of vegetation resulting in decreased food sources; increased blow-down of trees caused by the opening of forested areas; changes in the microclimatic conditions necessary for middens; increased vulnerability to predation; decreased reproductive interaction due to increased habitat fragmentation and population isolation; and increases in tourism, recreational use, and traffic. *Id*.

39. The final listing rule noted that due to its isolation and restricted population size and distribution, "the Mount Graham red squirrel is particularly vulnerable to any disturbance that might bring about further declines in its already precariously low numbers and weakening of genetic viability." *Id.* at 20,998.

40. FWS designated critical habitat for the Mount Graham red squirrel on January 5, 1990. 55 Fed. Reg. 425. The designation totals approximately 2,000 acres in three area—essentially all entirely located in high elevation, spruce-fir forest—Hawk Peak/Mount Graham, Heliograph Peak, and Webb Peak. These areas contained about 70 percent of all known squirrel middens.

41. In comments on the draft listing and critical habitat rule, FWS was asked to enlarge the critical habitat to include additional occupied and unoccupied areas, including the lower elevation mixed-conifer forests "where red squirrels have been previously observed and where they appear to have survived their most vulnerable period in history." *Id*. In declining the recommendation, FWS reasoned that the "higher elevations appear[] to be the most important to this squirrel and contains the highest density of squirrel middens." *Id*.

42. In addition, the University of Arizona objected to the inclusion of the 150-acre Mt. Graham International Observatory Site. FWS refused to exclude this area, noting that it was "composed largely of excellent habitat," and that "[e]xcellent habitat is in short supply for this species, totaling only four percent of the total habitat." *Id*.

**III. Post-Listing Habitat Destruction and Population Decline**

43. In 1988, Congress passed the Arizona-Idaho Conservation Act. Pub. L. No. 100-696, 102 Stat. 4571. In response to lobbying by the University of Arizona ("UA") , the Act included a provision exempting telescope construction from compliance with section 7 consultation requirements under the ESA. *Id.*, Title VI, Mount Graham International Observatory. Subsequently, three telescopes and associated roads and infrastructure have been constructed on and near Emerald Peak—the UA Columbus or Large Binocular Telescope, the Vatican Advanced Technology Telescope, and the German Max Plank Submillimeter Telescope.

44. As the Ninth Circuit Court of Appeals held in its decision reluctantly finding that the Act exempted telescope construction from ESA requirements:

> The possible extinction of an endangered species is not a threat that we take lightly. If the Mount Graham Red Squirrel becomes extinct as a result of the astrophysical research project, then the new telescopes will not represent an unqualified step forward in our quest for greater knowledge. As we expand our horizons by building bigger and better telescopes, we would do well to remember that we also have much to learn from the plant and animal life in the world around us. By contributing to the extinction of an endangered species, we limit our horizons at least as seriously as we do by delaying or even disallowing the construction of new telescopes . . . We can only hope that Congress's decision will prove to be a wise one.

*Mount Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1463 (9th Cir. 1992).

45. In addition to the direct and indirect destruction of habitat essential to the Mount Graham red squirrel resulting from telescope construction, the high elevation spruce-fir forests of the Pinaleño Mountains have experienced significant ecological changes, including large, high-severity fires in 1996, 2004, and 2017, extended drought, and outbreaks of forest insects.

46. Firefighting efforts to protect the telescopes have further compounded the loss of Mount Graham red squirrel habitat. As observed by the Forest Service in 2010, the telescopes "have precipitated aggressive firefighting techniques, and inhibited the restoration of natural ecosystem processes." Final Environmental Impact Statement for the Pinaleño Ecosystem Restoration Project, U.S. Forest Service Southwestern Region (February 2010).

47. In 1988, approximately 615 suitable acres of the estimated 700 historical acres of pure spruce-fir forest remained. Today, essentially none of that high elevation, essential spruce-fir habitat survives. Consequently, the Mount Graham red squirrel population has declined to critically low numbers and is surviving in the mixed conifer forest lower in elevation.

## IV. The Petition to Revise Critical Habitat

48. On December 14, 2017, Plaintiffs petitioned for revision of the existing critical habitat.

49. Even prior to the widespread loss and destruction of the high elevation spruce-fir forests, the lower elevation, mixed-conifer forests have long been recognized

as important to the continued survival and recovery of the Mount Graham red squirrel. As stated in a 1988 Biological Assessment prepared pursuant to section 7 of the Endangered Species Act, 16 U.S.C. § 1536(a)(2):

> In endangered species the key to persistence may be 'hot spots' of the habitat. These hot spots are places where the mean growth rates at low density are consistently positive. Thus, the hot spot may serve as refugia where the assurance for persistence in the entire range arises … In the Pinaleños, there are four locations that could serve as hot spots with the Mt. Graham area being the largest and most spruce-fir based. The other possible locations are Columbine/Ash Creek, Heliograph Peak, and perhaps Webb Peak.

Mount Graham Red Squirrel, An Expanded Biological Assessment of Impacts, Coronado National Forest Land Management Plan and University of Arizona Proposal for Mount Graham Astrophysical Development (Feb. 10, 1988). No areas outside of the high elevation, spruce-fir forests were designated as critical habitat, however.

50. The remaining Mount Graham red squirrels are now located in four areas: the Grant Hill area, the Riggs Lake area, Turkey Flat, and Columbine. All of these areas are outside spruce-fir forests, and are instead located in lower elevation, mixed-conifer forests which have not been designated as critical habitat.

51. The Petition specifically requests revision of critical habitat as follows:

> In general, we recommend designation of critical habitat in mixed-conifer and spruce-fir forest above 7,400 feet . . . [as recommended by the 2011 draft Recovery Plan]. What is not general, and most important here, is the inclusion of areas currently occupied by the Mount Graham red squirrel. These areas are the Grant Hill area, the Riggs Lake area, Turkey Flat, and Columbine.

52. FWS published the required 90-day finding in the Federal Register on September 6, 2019, announcing that Plaintiffs' Petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted. 84 Fed. Reg. 46,927.

53. Once FWS makes a positive 90-day finding, it must then make a subsequent determination as to how "to proceed with the requested revision" and publish

that determination in the Federal Register within 12 months. 16 U.S.C. § 1533(b)(3)(D)(ii).

54. FWS is in ongoing violation of the Endangered Species Act by failing to timely issue the 12-month finding.

## CLAIM FOR RELIEF

### Failure to Issue 12-Month Finding on Petition to Revise Critical Habitat in Violation of the ESA and APA

55. Plaintiffs incorporate all preceding paragraphs by reference.

56. In responding to a petition to revise critical habitat, the Endangered Species Act required FWS to make a determination as to how "to proceed with the requested revision" and publish that determination in the Federal Register within 12 months. 16 U.S.C. § 1533(b)(3)(D)(ii). Defendants have unlawfully failed to make this required finding.

57. Plaintiffs and their members are injured by FWS's failure to issue the required 12-month finding**.** An Order of the Court directing FWS to make this required finding would redress Plaintiffs' injuries.

58. FWS's violations are subject to judicial review under the ESA. *Id.* § 1540(c), (g)(1)(C).

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court:

1. Declare that Defendants violated the Endangered Species Act by failing to issue a 12-month finding on the Petition to revise critical habitat for the Mount Graham red squirrel;

2. Order FWS to issue the required 12-month finding within 90 days of this Court's Order;

3. Grant Plaintiffs their reasonable attorneys' fees and costs associated with this action, as provided by the ESA, § 1540(g)(4), or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4. Provide such additional relief as the Court may deem just and proper.

Respectfully Submitted this 30th day of December, 2020.

s/ Brian Segee
Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
(805) 750-8852
bsegee@biologicaldiversity.org
*Pro Hac Vice Application Pending*

Attorney for Plaintiffs